NOTICE

Decision filed 05/20/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180189-U

NO. 5-18-0189

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 08-CF-85 |
| | ) | |
| ANTHONY B. HUBBARD, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not err in denying the defendant leave to file a successive petition for postconviction relief, and any argument to the contrary would lack merit, and therefore the defendant's appointed appellate attorney is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 2   The defendant, Anthony B. Hubbard, appeals from the circuit court's order denying his *pro se* motion for leave to file a successive petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis it has filed with this court a motion to withdraw as counsel, along with a memorandum of law in support thereof. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). The defendant, having been served with a copy of the motion and memorandum, has filed with this court a written

1

response to the motion. This court has examined OSAD's *Finley* motion and memorandum, the defendant's written response thereto, and the entire record on appeal. After due consideration, this court has determined that this appeal does indeed lack merit.

¶ 3                                    BACKGROUND

¶ 4                          The Charge and the Guilty Plea

¶ 5     On July 7, 2008, the State filed an information charging the defendant with predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)). The child-complainant was the defendant's 12-year-old stepdaughter. On July 24, 2008, a Christian County grand jury returned an indictment charging the defendant with that selfsame offense. The day after the indictment's return, the defendant, his public defender, and a prosecutor appeared before the circuit court. The parties informed the court that they had reached a plea agreement under which the defendant would plead guilty as charged and would be sentenced to imprisonment for 20 years and mandatory supervised release for 3 years to natural life, and the State would refrain from charging the defendant with any other crimes perpetrated against his stepdaughter. Pursuant to this fully-negotiated agreement, the defendant pleaded guilty as charged. The court, after appropriately admonishing and questioning the defendant, accepted the guilty plea and imposed the agreed-upon sentence. The defendant did not move to withdraw his plea of guilty. He did not otherwise attempt an appeal from the judgment of conviction.

¶ 6       The First Postconviction Proceeding: From Petition Through Evidentiary Hearing

¶ 7     In October 2010, the defendant filed in the circuit court a *pro se* petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2010)). This petition presented seven claims, including a claim that the defendant was "convicted on the basis of a confession that

2

was not voluntary." In November 2010, the circuit court entered a docket-entry order summarily dismissing the petition but granting the defendant an opportunity to file an amended petition.

¶ 8    In May 2011, the defendant filed a *pro se* amended postconviction petition, wherein he presented a variety of claims. The principal claims were that (1) plea counsel provided the defendant with constitutionally ineffective assistance (i) when he failed to seek suppression of the defendant's statements to a police interrogator, Taylorville police investigator Richard Bryan, even though there was a sound legal basis for suppression, namely, that the defendant waived his *Miranda* rights and gave a statement to Bryan only because of a deception perpetrated by Bryan and the Christian County State's Attorney, (ii) when he advised the defendant to plead guilty even though he had failed to investigate the State's evidence, including DNA evidence, and therefore was in no position to determine whether a plausible defense could be developed, and (iii) when he failed to file a motion to withdraw the defendant's guilty plea and to perfect a direct appeal; (2) the Christian County State's Attorney used deception in order to persuade the defendant to waive his *Miranda* rights and submit to police interrogation, slyly assuring the defendant that he did not need a lawyer at the interrogation and that if he merely gave the police a statement, he would not be charged with a Class X felony but would only be charged with "a lesser offense of child endangerment," and this deception rendered the defendant's *Miranda* waiver unknowing and involuntary, and once the police interrogation of the defendant began, investigator Bryan guided and coerced the defendant into making incriminating statements; and (3) the circuit court lacked jurisdiction to accept the defendant's guilty plea because the State's factual basis was deficient or unacceptable for certain specified reasons. The court docketed the *pro se* amended postconviction petition for further proceedings, and it appointed postconviction counsel for the defendant.

¶ 9    In January 2012, the court held an evidentiary hearing on the defendant's *pro se* amended petition for postconviction relief. At the start of the hearing, postconviction counsel presented a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). Counsel told the court that the defendant's *pro se* amended postconviction petition contained all of the claims that she and the defendant could think of and therefore she had chosen not to amend it.

¶ 10    At the evidentiary hearing, the defendant testified on his own behalf. During the direct examination, postconviction counsel asked the defendant about his postconviction claim that plea counsel provided ineffective assistance by failing to file a motion to suppress the statements that the defendant had made to Taylorville police investigator Richard Bryan. The defendant testified that he was "not really too sure" of what plea counsel had told him about the likelihood of prevailing on a suppression motion, but he did recall informing plea counsel of facts pertinent to the issue of suppression. Specifically, the defendant informed plea counsel that he and the State's Attorney had a meeting sometime prior to the filing of the charge in this case. (This court notes that the information in this case was filed on July 7, 2008.) At that meeting, the State's Attorney told the defendant that if he went to police headquarters and confessed, he would not be charged with sexually assaulting his stepdaughter but would be charged merely with child endangerment, a far less serious charge, and he would be sentenced to prison for only two years, and the defendant agreed to the State's Attorney's proposition in order to guarantee himself this short prison sentence, even though he had not committed any crime against his stepdaughter. The defendant further testified that he gave a confession solely because of the State's Attorney's deceitful promise of a less-serious charge.

¶ 11    Also at the evidentiary hearing, two witnesses testified on behalf of the State. One of those witnesses, the defendant's plea counsel, testified that he did not recall the defendant's "ever saying

4

anything" about the possibility of filing a motion to suppress statements. Plea counsel also did not recall the defendant's ever stating that he had met with the State's Attorney sometime prior to the filing of the charge. According to plea counsel, the defendant, from the start of counsel's representation, wanted a plea agreement with the State.

¶ 12 The State's other witness at the evidentiary hearing was Taylorville police investigator Richard Bryan. He testified that he interrogated the defendant twice, first on May 21, 2008, and again on June 16, 2008, and the defendant was not in custody on either occasion. Sometime after the first interrogation, the defendant contacted Bryan and said that he wanted to meet with the Christian County State's Attorney. Not long afterward, the defendant met with the State's Attorney at the latter's office, and Bryan sat in on that meeting. The defendant and the State's Attorney met on two subsequent occasions, and Bryan was present for those meetings, as well. Bryan characterized the meetings between the defendant and the State's Attorney as negotiation sessions, and he thought that the defendant was a good negotiator. According to Bryan, the defendant always seemed eager to resolve the matter quickly, without an attorney. During the meetings between the defendant and the State's Attorney, the two focused on possible offenses with which the defendant might be charged and on possible sentences that he might receive. Bryan did not recall any discussion of possibly charging the defendant with child endangerment; as he recalled the negotiation sessions, the only potential charges discussed were sex offenses. Also, according to Bryan, the defendant and the State's Attorney never reached an agreement as to a sentence, though eventually the State's Attorney told the defendant that he would agree to a cap of 25 years.

¶ 13 At the close of the evidentiary hearing, the circuit court found that the defendant's testimony was not credible and that the defendant had failed to show any substantial denial of any

5

constitutional right. In a subsequent docket-entry order, the court found, *inter alia*, "no violations of defendant's constitutional rights by any law enforcement officer."

¶ 14                    The Appeal From the First Postconviction Proceeding

¶ 15    The defendant appealed from the denial order. In this court, the defendant, by his appointed counsel, OSAD, argued that the circuit court had committed manifest error in denying his amended postconviction proceeding, where DNA evidence exonerated him of the offense to which he pleaded guilty. In the course of making his argument, the defendant asserted that his confession during police interrogation had been a false confession. (The defendant did not specify for this court any particular reason for his making a false confession.)

¶ 16    In November 2013, this court rejected the defendant's DNA-exoneration argument and affirmed the circuit court's January 2012 denial of the amended postconviction petition. *People v. Hubbard*, 2013 IL App (5th) 120033-U. After concluding that DNA evidence definitely did not exonerate the defendant, this court found that "there is nothing left to support the notion that the defendant's confession was a false one." *Id.* ¶ 10. This court described the contents of DVD recordings of the two police interrogations of the defendant. This court commented, *inter alia*, on the cordiality of the interrogations and concluded that "[i]t is patently clear from those recordings that the defendant was operating freely and voluntarily at all times during the interviews." *Id.* ¶ 11.

¶ 17                    A Petition for Relief From Judgment

¶ 18    In October 2014, the defendant filed a *pro se* petition for relief from judgment. See 735 ILCS 5/2-1401(f) (West 2014). The defendant claimed therein that the judgment of conviction in the instant case was void due to the following due-process violations: (1) the indictment in his case had been obtained (i) through the State's intentional use of perjured testimony regarding

6

statements that the defendant allegedly made to a police investigator during a telephone conversation, and (ii) through the State's improper use of testimony regarding "other bad acts" committed by the defendant; and (2) the State's factual basis for the defendant's guilty plea included perjured testimony from the alleged victim. Under those circumstances, the defendant claimed, the circuit court acted beyond its inherent power when it entered the judgment of conviction in his case, and therefore the judgment was void. In November 2014, the State filed a motion to dismiss the section 2-1401 petition. On August 31, 2015, the circuit court entered a written order wherein the court "dismisse[d] and denie[d]" the petition. The court found that it had personal and subject-matter jurisdiction in the case, that the judgment of conviction was not void, that the defendant had not been deprived of due process during the proceedings that resulted in his conviction, and that the filing of the section 2-1401 petition was untimely. The defendant perfected an appeal from the dismissal-denial order. However, in February 2016, this court dismissed the appeal for want of prosecution for failure to file the record on appeal. *People v. Hubbard*, No. 5-15-0423.

¶ 19            The Motion for Leave to File a Successive Postconviction Petition

¶ 20    On January 26, 2018, the defendant filed the motion that is the subject of the instant appeal—his *pro se* motion for leave to file a successive postconviction petition. The defendant sought leave to file a petition claiming that postconviction counsel provided him with objectively unreasonable assistance when, at the January 2012 evidentiary hearing, counsel "withdrew" or "abandoned" the defendant's postconviction claim that the Christian County State's Attorney and Taylorville police investigator Richard Bryan had "coerced" him into making incriminating statements, when those two men "tricked" him into waiving his *Miranda* rights by dishonestly assuring him that if he confessed to committing predatory criminal sexual assault of a child, he

7

would be charged merely with child endangerment, a far less serious charge, and when, during the interrogation itself, investigator Bryan "fed him factual details of the crime" and guided him, through "loaded" questions, into making a confession that sounded credible but was, nevertheless, false. The defendant asserted that he satisfied the cause-and-prejudice test applicable to successive postconviction petitions, though he did not actually discuss the issues of cause or prejudice. Additionally, the defendant stated that he was actually innocent, and that he possessed "newly discovered evidence" that postconviction counsel was unreasonable for not pursing the claim that the State's Attorney and police investigator Bryan had tricked and coerced him into confessing. In support of the actual-innocense claim, the defendant submitted two articles published in the Breeze-Courier newspaper, purportedly in February 2017.

¶ 21     The February 2017 Breeze-Courier articles reported on a then-recent Christian County jury trial of a Shelbyville man who had been charged with aggravated domestic battery, accused of throwing his baby daughter against a wall. According to the articles, one witness at the jury trial was Taylorville police investigator Richard Bryan, who testified that he interrogated and took a confession from the Shelbyville man. Under cross-examination by defense counsel, according to the articles, investigator Bryan testified that he tries to build rapport with the criminal suspects whom he interrogates and that he uses various techniques, including lying to the suspects, in order to get them to tell the truth. The Breeze-Courier articles also reported that the Shelbyville man testified that Bryan had coerced him into confessing falsely, by falsely promising him that if he confessed, he would be free to go to his hospitalized daughter and check on her. According to the Breeze-Courier, the jury trial ended with the Shelbyville man's acquittal. The instant defendant, in his motion for leave to file a successive postconviction petition, argued that the content of the Breeze-Courier articles supported his claim that investigator Bryan had coerced him into waiving

8

his *Miranda* rights and confessing to predatory criminal sexual assault of a child, the offense with which he was eventually charged, and to which he pleaded guilty, in 2008.

¶ 22    On February 27, 2018, the circuit court, in a docket-entry order, denied the defendant's motion for leave to file a successive postconviction petition.  The court noted that the defendant was seeking to present a claim that postconviction counsel in the first postconviction proceeding had failed to present the defendant's coerced-confession claim, but the court further noted that "[i]t is clear from the record" that the coerced-confession claim had been litigated during the evidentiary hearing in that first proceeding.  The court described the defendant's motion for leave to file a successive postconviction petition as "a frivolous attempt *** to continually relitigate issues that have been long resolved."  On March 21, 2018, the defendant filed a notice of appeal from the denial order, thus perfecting the instant appeal.

¶ 23                                      ANALYSIS

¶ 24    The defendant appeals from the circuit court's denial of his *pro se* motion for leave to file a successive petition for postconviction relief.  Appellate review of such an order is *de novo*. *People v. Bailey*, 2017 IL 121450, ¶ 13.  As noted *supra*, the defendant's appointed attorney in this appeal, OSAD, has concluded that this appeal lacks arguable merit.  In the memorandum of law accompanying its *Finley* motion, OSAD discusses two potential issues on appeal, *viz.*: (1) whether postconviction counsel provided the defendant with unreasonable assistance during the first postconviction proceeding, and (2) whether the circuit court erred in denying the defendant leave to file a successive postconviction petition based on newly discovered evidence.  This court agrees with OSAD that these two potential issues are wholly without merit and that this appeal does not present any meritorious issue.

9

¶ 25    In regard to the first of the two potential issues identified by OSAD, *i.e.*, the unreasonable-assistance issue, this court notes that the Post-Conviction Hearing Act (Act) provides a means by which a person convicted of a criminal offense may assert that he suffered a substantial denial of a federal or state constitutional right "in the proceedings which resulted in his or her conviction." 725 ILCS 5/122-1(a)(1) (West 2018); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). The instant defendant, in his motion for leave to file a successive postconviction petition, did not seek leave to assert that he had suffered a constitutional deprivation in the proceedings which resulted in his conviction. Instead, he sought leave to assert that he had been deprived of a statutory right—specifically, the right to the reasonable assistance of postconviction counsel—during the proceedings on his first postconviction petition. See, *e.g.*, *People v. Hardin*, 217 Ill. 2d 289, 299 (2005) (reasonable assistance of postconviction counsel is provided as a matter of "legislative grace"). In other words, the defendant sought to raise a claim that is outside the purview of the Act. The postconviction process is decidedly not a forum for challenging rights violations that allegedly occurred in a previous postconviction proceeding. In regard to unreasonable-assistance claims in particular, our supreme court has held that "the post[ ]conviction process does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier post[ ]conviction proceeding." *People v. Szabo*, 186 Ill. 2d 19, 26 (1998). The proper forum for the defendant's unreasonable-assistance issue was his appeal from the denial of his first postconviction petition.

¶ 26    (This court adds that the exact claim the defendant sought to raise in a successive postconviction petition—*i.e.*, the claim that postconviction counsel at his first postconviction proceeding "withdrew" or "abandoned" the defendant's claim that he had been tricked into confessing—was flatly contradicted by the record, as the circuit court recognized at the time it

10

denied the defendant leave to file a successive petition. Postconviction counsel clearly did not withdraw or abandon that claim. To the contrary, at the January 2012 evidentiary hearing, postconviction counsel specifically questioned the defendant about that claim, and the defendant testified in some detail about the trick or deception that he had alleged, as described *supra*. The problem for the defendant was not that postconviction counsel withdrew or abandoned his claim; counsel did no such thing. The problem for the defendant was that the circuit court simply did not believe his testimony about the alleged trick, as the court made clear at the close of the evidentiary hearing. At the hearing, the defendant had the burden of proving a substantial constitutional violation, and the court acted as the trier of fact, determining witness credibility, etc. See, *e.g.*, *People v. Williams*, 2017 IL App (1st) 152021, ¶ 22. Given the court's disbelief of the defendant's testimony, his postconviction case was sunk.)

¶ 27 The other potential issue identified by OSAD is whether the circuit court erred in denying the defendant leave to file a successive postconviction petition based on newly discovered evidence. The Act contemplates the filing of only one postconviction petition. 725 ILCS 5/122-3 (West 2018) (any constitutional claim "not raised in the original or an amended petition is waived"); *Bailey*, 2017 IL 121450, ¶ 15. However, a defendant will be granted leave to file a successive postconviction petition if he sets forth a colorable claim of actual innocence based on newly discovered evidence. *People v. Ortiz*, 235 Ill. 2d 319, 330-31 (2009). In order to raise an actual-innocence claim, a defendant must present evidence that meets each of these three criteria: (1) the evidence was unavailable at the time of the defendant's trial and could not have been discovered sooner through due diligence, (2) the evidence is material and noncumulative, and (3) the evidence is of such conclusive character that it probably would change the result on retrial. *People v. Edwards*, 2012 IL 111711, ¶ 32. For the purpose of deciding this potential issue, this

11

court will assume that the defendant, despite his valid plea of guilty to the charged offense, may assert an actual-innocence claim under the Act. See *People v. Shaw*, 2019 IL App (1st) 152994, ¶¶ 45, 54 (a guilty-plea defendant may bring an actual-innocence claim without challenging the validity of the plea, for no person convicted of a crime should be deprived of his liberty given compelling evidence of actual innocence).

¶ 28 In support of his actual-innocence claim, the defendant submitted documentation in the form of two newspaper articles purportedly published in February 2017. These articles, described in detail *supra*, reported on a then-recent Christian County criminal trial at which Taylorville police investigator Richard Bryan testified, *inter alia*, that he tried to build rapport with criminal suspects whom he interrogated and that he sometimes lied to those suspects in an attempt to persuade them to talk. The defendant argued that the content of those newspaper articles supported his claim that investigator Bryan had coerced him into waiving his *Miranda* rights and confessing, falsely, that he had abused his stepdaughter.

¶ 29 That a police interrogator, such as investigator Bryan, would seek to build rapport with criminal suspects, or that he would rely on various techniques, including lying, in order to persuade suspects to talk, is unsurprising. Such an approach is quite common. If the defendant were put on trial for the instant offense, and if the jury heard and believed testimony that investigator Bryan seeks to build rapport with suspects during interrogations, or that Bryan sometimes lies to suspects in an attempt to persuade them to talk, such testimony definitely would not prevent a guilty verdict. The defendant failed to present evidence of such conclusive character that it probably would change the result at a trial, and he therefore failed to set forth a colorable claim of actual innocence based on newly discovered evidence.

12

¶ 30                        CONCLUSION

¶ 31    For the reasons set forth above, this court concludes that the circuit court did not err in denying the defendant leave to file a successive postconviction petition. No argument to the contrary would have merit. Accordingly, OSAD is granted leave to withdraw as counsel for the defendant, and the judgment of the circuit court is affirmed.


¶ 32    Motion granted; judgment affirmed.